294 So.2d 925 (1974)
Annie Bell PAGE, mother of the Deceased, Albert James, and his minor children, Robert Franklin, et al.
v.
A. GIAMBELLUCA CONSTRUCTION COMPANY, INC., and Employers-Commercial Union Insurance Companies.
No. 5757.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Rehearing Denied June 6, 1974.
Opinion on Motion to Amend Judgment July 3, 1974.
Writ Granted August 28, 1974.
Orlando G. Bendana, New Orleans, for plaintiffs-appellants.
Drury, Lozes & Curry, James H. Drury, New Orleans, for defendants-appellees.
Before GULOTTA, J., and GAUDIN and ZACCARIA, JJ. pro tem.
FRANK V. ZACCARIA, Judge Pro Tem.
This is an appeal from a judgment dismissing survivor's benefits in a claim filed under the Workmen's Compensation Laws of this State. Plaintiffs and Appellants are the mother of the deceased, Albert James and his minor children, Robert Franklin, Pamela Jean, Albert, Jr., Lawrence, Mary Katherine, Larry C., Penny J., Debbie E. and Wilda Faye James.
Plaintiff's son and father, respectively hereinafter referred to as "James" was employed as a laborer on a clean-up detail following a hurricane which devastated a section of the Gulf Coast in Mississippi. He worked ten (10) hours a day, six (6) days a week, and his last day of work was Saturday, October 29, 1970. His last check was for $57.70 for the Friday and Saturday of the last week that he worked, the payroll dates ending on Thursdays and commencing on Fridays.
On the last day that he worked James had breakfast in Bogalusa, appeared cheerful and relaxed and boarded the bus to the *926 ride to Gulfport, Mississippi. The bus which took James to and from work each day was a privately operated business endeavor by a third party and had no connection with his duties as an employee of Giambelluca Construction Company. On the last day that he worked, Saturday, October 29, 1970 he was unable to complete his day's work and rested in the shade until the bus was leaving to go to Bogalusa. He had to be helped on the bus and was in a rather lethargic, if not almost comatose, state during the ride to Bogalusa. Upon his arrival there he had to receive assistance in order to get to his house.
The next day he was taken to Charity Hospital in Bogalusa and subsequently removed to the Charity Hospital in New Orleans where he eventually died on what is commonly referred to as a heart attack and which the death certificate recites to be "subarachnoid hemorrhage hypertension, renal decomposition and cardiorespiratory arrest".
The date of death was December 10, 1970.
The record substantially indicates a consensus of opinion among the medical experts that the work James was doing aggravated his preexisting condition. He was suffering from hypertension and high blood pressure. On March 23, 1970 he was admitted to the hospital as a result of being beaten in a fight. On May 28, 1970 his blood pressure was 210/150 at which time he had been admitted to Charity Hospital for a gunshot wound of the wrist. On November 1, 1970 his blood pressure reading was 210/130. All doctors agreed that a man with this type of blood pressure problem was a walking candidate for a heart attack and he should not have been allowed to do anything more than lie in bed.
There were no pre-employment physical examinations given to James and there is medical testimony to the effect that no doctor would have authorized the hiring of this person if such an examination had been made. The record therefore indicates that the deceased was suffering from a severe case of high blood pressure and was highly susceptible to a cardio vascular attack.
The issue presented in the first incidence is whether or not the symptoms of his illness occurred on the job and secondly, did the employment aggravate a preexisting condition, causing his death.
We are of the opinion that the symptoms occurred on the job in view of the testimony of his co-workers and Mrs. Robinson, who cooked and cared for James. The medical consensus is that the employment aggravated a preexisting condition and we are therefore of the opinion that his death was a compensable, work related injury.
Our jurisprudence is to the effect that heart attacks are injuries compensable under our law, Fife v. Kaiser Aluminum Chemical Corp., La.App., 263 So.2d 351.
Nor is it necessary for the claimants to overcome the premise that the diseased or weakened condition might alone eventually have produced disability. A worker who is abnormally susceptible to disability from an accident is protected by the provisions of the compensation statute even though the accident would have caused little or no harm to a healthy worker. Lum v. Employer's Mutual Liability Insurance Co. of Wisconsin, La.App., 216 So.2d 889, writ refused, 253 La. 642, 219 So.2d 175.
For these reasons the Judgment of the Lower Court is reversed and Judgment is herein granted in favor of Appellants, the minor children, Robert Franklin, Pamela Jean, Albert, Jr., Lawrence, Mary Katherine, Larry C., Penny J., Debbie E. and Wilda Faye, and against Appellees, A. Giambelluca Construction Company, Inc., and Employers-Commercial Union Insurance Companies, in the amount of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS for funeral expenses incurred, and compensation at the rate of $6.51 per week per child for 500 weeks together with *927 legal interest at the rate of 8% per annum in the amount due and owing from October 29, 1970 to this date. This sum is based upon the formula upheld in the case of Freeman v. New Amsterdam Casualty Co., La.App. 3rd Circuit, 1967, 199 So.2d 356. Said formula multiplies percent of wages given toward support of the children against 65% which in turn is multiplied against the weekly wages of decedent.
Applied herein, basing decedent's weekly wages on the fact that he earned $57.50 for two days work, this would be $173.10 for one week and $9,001 for the year. He contributed $520 for the year or 5.7% of his wages. So,
5.7 × 65% × 173.10 = $6.51 per week
It was also held in the Freeman case that the amount arrived at applies to each dependant and not to all of them as a class. However, applying the minimum rate of $17.50 to each of nine children causes the total to exceed the maximum allowed of $65.00 per week. Hence, it is concluded, the Court should allow each child $6.51 or a total of $59.59 per week for 500 weeks. (L.S.A.R.S.23:1231.)
The Court denies any recovery for Annie Bell Page because the decedent left children as survivors. (R.S. 23:1232, Para. 6)
All costs of Court are herein assessed against the defendants.
Reversed and rendered.

ON MOTION TO AMEND JUDGMENT
FRANK V. ZACCARIA, Judge Pro Tem.
The award made in this Court's judgment of May 10, 1974, in favor of the minor children herein of $59.59 per week for 500 weeks exceeded the maximum benefits allowed by statute as of October 29, 1970, decedent's last day of work. The maximum workmen's compensation benefits allowed as of that date were $49.00 per week for 500 weeks. L.S.A.-R.S. 23:1202 as amended December 31, 1969. Legal interest is 7%.
Wherefore, the judgment of this Court is amended to read as follows:
The Judgment of the Lower Court is reversed and Judgment is herein granted in favor of Appellants the minor children Robert Franklin James, Pamela Jean James, Albert James, Jr., Lawrence James, Mary Katherine James Larry C. James, Penny J. James, Debbie E. James, and Wilda Faye James, and against appellees, A. Giambelluca Construction Company, Inc. and Employers-Commercial Union Insurance Companies, in the amount of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS for funeral expenses incurred, and compensation at the rate of $49.00 per week for 500 weeks together with legal interest at the rate of 7% per annum.
The Court denies any recovery for Annie Bell Page because the decedent left children as survivors. (L.S.A.-R.S. 23.1232, Para. 6)
All costs of Court are herein assessed against the defendants.
Rendered as amended.
GULOTTA, Judge (dissenting).
I respectfully dissent.
Defendants filed a motion on June 14, 1974, to amend a judgment, subsequent to a denial of an application for rehearing on June 6, 1974. While there appears to be merit in the motion, I am of the opinion that we are without jurisdiction to entertain a motion filed subsequent to the denial of a rehearing. See Montagne v. Tinker, 201 So.2d 701 (La.App. 3rd Cir. 1967), and cases cited therein.
Accordingly, I feel compelled to dissent.