319 So.2d 534 (1975)
Emily Harrison FRANCIS, Administratrix of Succession and Tutrix of minor
v.
GERLACH MEAT COMPANY, INC.
No. 12681.
Court of Appeal of Louisiana, Second Circuit.
September 3, 1975.
Rehearing Denied October 1, 1975.
*535 Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Shreveport, for defendant-appellant.
Feist, Schober & Howell by James Fleet Howell, Shreveport, for plaintiff-appellee.
Before PRICE, DENNIS, and MARVIN, JJ.
En Banc. Rehearing Denied October 1, 1975.
MARVIN, Judge.
Defendant-employer appeals from a judgment below awarding workmen's compensation death benefits to a minor child of the deceased employee, Gustavia Davis Scott.
Mrs. Scott operated or attended a meat pattie machine for the appellant. Her principal duties required her to take twoounce patties from a conveyor and to put them in cardboard boxes designed to contain 10 pounds of the patties. When a box was filled she would place the box on a dolly which, when loaded with 40 or 50 boxes, would be pushed by other employees to a walk-in freezer and unloaded. Only occasionally would Mrs. Scott assist other employees in unloading the dolly in the freezer.
Mrs. Scott worked at the machine for eight hours daily, five days weekly, from 7:00 a. m. until 3:30 p. m. with a lunch break. She usually worked one or one and one-half hours after 3:30 p. m. as "overtime" work, cleaning and coating with vegetable oil the parts of the pattie machine which came into contact with the meat. She had been employed by defendant for almost six years.
On May 1, 1972, about 3:30 p. m., Mrs. Scott was found unconscious on the floor near the pattie machine. She was immediately taken to a hospital where she died shortly afterwards despite the efforts of medical doctors attending her. Mrs. Scott, at age 34, had a history of high blood pressure or hypertension. Her blood pressure on admission to the hospital after the rupture was 174/120. The diagnosis before and after autopsy was a ruptured intracranial aneurysm. The autopsy revealed the rupture to have occurred in the wall of the anterior communicating artery which is located at the middle of the base of the skull.
The trial court found the employee sustained a ruptured blood vessel while on the job and while actually performing physical labor for her employer, and that it was the sudden and unexpected rupture of the blood vessel which directly caused her death while she was in the active pursuit of her duties for her employer.
The employer contends that the trial court erred in awarding death benefits because there was no accident within the *536 meaning of the workmen's compensation law.
We are guided by the principles set forth in Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); in Prim v. Shreveport, 297 So.2d 421 (La.1974); and in Canter v. Koehring Co., 283 So.2d 716 (La.1972).
From Prim, which involved either a blood clot or a rupture of a blood vessel, we learn that the employee has the burden of proving by a preponderance of the evidence that an employment accident occurred and that it had a causal relationship to the disability.
From Ferguson, which involved a blood clot, called there a thrombosis, embolism or stroke, we learn that cardiovascular occurences which happen suddenly to cause death or paralysis come well within the definition of "personal injury by accident" as set forth in R.S. 23:1031. In Ferguson, the court said:
" . . . when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816." 270 So.2d 869.
See also the Third Circuit's observation that Ferguson "specifically held that a stroke was an accident within the meaning of the Workmen's Compensation Act", in Leleux v. Lumbermen's Mutual, 308 So.2d 527, at page 528 (La.App. 3rd Cir. 1975), writ granted 311 So.2d 260 (La.).
The question then becomes not accident, but causal connection between the work-related activities of the employee and the thing (in this case the repture of the aneurysm) that resulted in death or disability. See Malone, Louisiana Workmen's Compensation Law and Practice, sec. 212, at Supp. page 75. Essentially this is a question of fact, the primary determination of which rests with the trial judge.
In this area of factual determination, we learn from Canter:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."
We state the issue this way:
Was there a preponderance of evidence under the circumstances presented to afford a reasonable factual basis for the trial court to conclude and reasonably infer that the death of Mrs. Scott was causally connected to her work related activities on May 1, 1972?

THE MEDICAL TESTIMONY
Two doctorsone a specialist in internal medicine and the other a neurosurgeonsaw and attended the employee in the hospital before death occurred. Other doctors who testified were the pathologist who performed the post-mortem examination to determine the exact place of the ruptured aneurysm, and a radiologist who examined X-rays taken of Mrs. Scott. The internist was called into the case by the neurosurgeon.
The pathologist would not express an opinion and stated he would "rather not answer clinical questions".
*537 The radiologist formerly was a general practitioner before acquiring specialist status in radiology. His opinion was that the rupture of the aneurysm would have occurred irrespective of Mrs. Scott's work. He agreed that it was "possible" that the stress and exertion accompanying physical labor of the type Mrs. Scott was doing was a risk to guard against which "could" have caused the aneurysm to rupture, but it would be "difficult to prove" clinically. He further commented that in his former practice he had a number of ruptured aneurysms and was never able to equate the rupture with the work the patient was doing when it occurred.
The neurosurgeon testified similarly, and stated that he did not make the correlation between activity of the person and the rupture in any case. It was his opinion that the kind of work Mrs. Scott was doing during the hours preceding the rupture was in "no way" connected with the rupture of the aneurysm and that the rupture would have occurred at the time it did, regardless of Mrs. Scott's whereabouts.
Both the neurosurgeon and the radiologist however, admitted that their advice to a person in Mrs. Scott's condition doing the work she was doing, would be to quit work and stay home because the stress and strain of working would increase blood pressure and this would "tend" to make the aneurysm rupture. The trial judge asked questions of the neurosurgeon in this regard:
"THE WITNESS: I think I probably would have suggested that she not go back to work.
"THE COURT: And the magic question, why?
"THE WITNESS: Because of the possibility of this rupturing her aneurysm.
"THE COURT: Would that and that alonewell, I won't put it on that alone. You would have put her into, as Mr. Howell indicated, a sedentary situation?
"THE WITNESS: Or no work at allhousework.
"THE COURT: No commercial, really, of any significance of any kind?
"THE WITNESS: Housework. I would have allowed housework, you know, and regular activity without trying to decrease the stress and strains as most you can. In any kind of working for somebody else is a stress and strain." Tr. p. 138, lines 18-31 Tr. p. 139, line 1. (Emphasis Supplied)
The specialist in internal medicine was definite in his opinion that the accompanying stress and strain and physical activity of her employment "would aggravate" Mrs. Scott's pre-existing hypertension and that "would increase the probability of the aneurysm rupturing."
In Page v. Giambelluca Construction Company, 294 So.2d 925 (La.App. 4th Cir. 1974), writ denied on this point, 299 So.2d 354 (La.1974), the decedent-employee who had pre-existing hypertension and high blood pressure, died of a subarachnoid hemorrhage and other resulting complications. The issue was one of causal connection, "did the employment aggravate a pre-existing condition, causing his death [?]" The Court observed:
"Nor is it necessary for the claimants to overcome the premise that the diseased or weakened condition might alone eventually have produced disability. A worker who is abnormally susceptible to disability from an accident is protected by the provisions of the compensation statute even though the accident would have caused little or no harm to a healthy worker. Lum v. Employers Mutual Liability Insurance Co. of Wisconsin, La.App., 216 So.2d 889, writ refused, 253 La. 642, 219 So.2d 175."
The Third Circuit properly analyzed and stated the issue in a similar factual situation as causal relation in Landry v. Southern Farm Bureau, 208 So.2d 703, La.App. *538 3rd Cir., 1968. The court observed and then held as follows:
"There is no dispute as to the applicable law. The mere occurrence of a heart attack while at work does not entitled an employee to compensation. It must be shown that the attack is causally related to the disability, i. e., that it [the employment activity] caused, contributed to or accelerated the heart disease. . .
"This case presents a close factual question. Ultimately, the basis of our decision is that we find no manifest error on the part of the trial judge in his evaluation of the testimony." 208 So.2d 704-705.
A much earlier case in this circuit, Roberson v. Michigan Mutual Liability Company, 90 So.2d 465 (La.App. 2d Cir., 1956) also presents the proper approach to be made in cases of stroke and heart attack. There the court analyzed the matter in all aspects"accident?", "arising out of and during the course of employment?", and "causal connection?". After reviewing and discussing leading cases at that time, the court quoted with approval:
"Summarizing its conclusions, after a review of the jurisprudence, the Orleans Court of Appeal in Kraemer v. Jahncke Services, Inc., supra [La.App., 83 So.2d 916], stated:
"From the established jurisprudence a rule can be formulated that an accident must either cause or aggravate a preexistent heart ailment before recovery can be had, and the aggravation must be due to some stress or strain, physical or mental, primarily suffered by the employee while performing his work due to excessive labor, fright, trauma, or any other cause that could aggravate the pre-existing condition; nor is it necessary that there be any great amount of physical strain or unusual exertion in the performance of the duties. It is only necessary that sufficient mental or physical strain occur during the performance of the duties, whether it be heart trouble or any other organic ailment. Nor is it necessary that the result of such stress or strain develop at the time or at the scene of employment if the stress and strain were sufficient to have caused the aggravation ultimately resulting in disability or death. The proof, of course, of the causal connection always rests with the plaintiff.'" 90 So.2d 470. (Emphasis Supplied)
We have carefully considered the medical testimony and all other circumstances relating to Mrs. Scott's death. We agree with the trial court's determination and we cannot say that the trial judge was manifestly erroneous in finding the death of Mrs. Scott was causally connected to her work-related activities on the day of her death.
Attorney's fees and penalties are not allowable under R.S. 23:1201.2 unless the failure to pay is found to be arbitrary, capricious, or without probable cause. We cannot make such a finding under the circumstances of this case.
Affirmed at appellant's cost.
* * * * * *
PRICE, J., dissents and assigns written reasons.
PRICE, Judge (dissenting):
I must respectfully dissent from the majority opinion in this matter.
In affirming the trial court's conclusion that Mrs. Scott suffered a compensable accident under the Workmen's Compensation Statute, the majority relies on three decisions: Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Prim v. City of Shreveport, 297 So.2d 421 (La.1974); and Canter v. Koehring Co., 283 So.2d 716 (La.1972). The principles of law for which each of these decisions are cited by the majority do not support the result reached in the opinions, *539 but to the contrary mandate a reversal of the trial judge when properly related to the evidence presented in the record.
Ferguson and the several cases following the principles set forth in that decision are distinguishable and not applicable to the case at hand. Ferguson does not eliminate the necessity of showing an "accident" in order to come under the compensation act for claims involving venous and arterial "injuries". Rachal v. Tennessee Gas Pipeline Company, 308 So.2d 459 (La.App. 3rd Cir. 1975). The Ferguson line of cases dealt with some precipitating event that could be segregated from the normal events of the day and classified as an accident. For example, the argument over the amount of a paycheck in Ferguson; subjecting the employee to extreme temperature changes in Gotte v. Cities Service Oil Company, 298 So.2d 920 (La.App. 3rd Cir. 1974), or strenuous exertion on a particularly hot day in Turner v. Howard Motors, Inc., 192 So.2d 205 (La.App. 4th Cir. 1966). Mrs. Scott was not the victim of any such event. Her aneurysm was congenital and while the rupture did occur on the job, the rupture did not come within the meaning of "accident" and "injury" in R.S. 23:1021(1) and (7).
On the day Mrs. Scott suffered the ruptured aneurysm she was performing her usual and customary duties, and the overwhelming medical testimony reflects the belief that the performance of her duties did not contribute to the repture of the anneurysm. Mrs. Scott's blood pressure was reported high upon her arrival at Schumpert Hospital. Her sister, in giving as much medical history as she knew to the attending physician at the hospital, said while Mrs. Scott had not seen a doctor in recent years, she knew that she had hypertension. We understand from the medical evidence that hypertension will of itself elevate the blood pressure above normal without undue physical exertion.
All the medical testimony was in agreement that an increase in blood pressure could contribute to the probability of rupturing an aneurysm. However, this testimony does not establish that it was more probable than not her normal work activities would have caused a significant elevation in blood pressure.
Although procedural rules are construed liberally in favor of workmen's compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjectue. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
Recovery has also been denied for lack of causal connection where the decedent, a victim of hypertension, suffered a stroke when there was no evidence that he had engaged in any physical or mental activity previous to his stroke that would have increased his blood pressure. Leleux v. Lumbermen's Mutual Insurance Co., 308 So.2d 527 (La.App. 3rd Cir. 1975). Mr. Leleux was a truck driver employed to haul rice from Crowley to the rice mill. He was in the process of taking on his fifth load when he suffered the fatal stroke.
Medical testimony elicited at the trial was in agreement that a stroke would be more likely to occur under Mr. Leleux's working conditions than if he were at home. But the court went on to find that there was no indication in the record that he was engaged in any physical activity, which would have caused an elevation of blood pressure.
The weight of the medical testimony at trial was to the effect that Mrs. Scott's duties would not be considered strenuous or that it would be such as to increase her blood pressure. Dr. Loyd Carey Megason, a neurosurgeon attending Mrs. Scott when *540 she was rushed to Schumpert Hospital, testified at the trial, and we quote his pertinent testimony as follows:
"Q. Would that have occurredthat is, the rupture of the aneurysmwhen it did wherever this woman might have been and whatever she was doing?
"A. I believe that is true; yes, sir.
"THE COURT: I am sorry. What was the question?
"THE WITNESS: The question was would this woman have suffered a ruptured aneurysm at the time she did wherever she was and whatever she was doing.
"THE COURT: That sounds like a fairly important question. I want to be sure I got it. And your answer was `Yes, I believe so'.
"THE WITNESS: That is correct. Nowwell, yes, sir, I believe it probably would have."
Later on in his testimony Mrs. Scott's job duties were posed in a hypothetical question to Dr. Megason and he testified as follows:
"Q. Can you see any connection whatever between this ruptured aneurysm and the type of work that I have just described to you?
"A. I see no direct correlation between that at all, sir."
The majority opinion has misconstrued the medical testimony of Dr. Megason and the excerpt from his testimony incorporated into the opinion does not reflect the general tenor of his medical opinion relating to causation.
The Canter decision cited by the majority is a tort case which merely contains an explanation of the manifest error rule and the weight to be accorded the trial judge's finding of fact. This rule must necessarily be subject to the requirement that there is a preponderance of the evidence to sustain the burden of proof required of the plaintiff.
Where there is no conflict in the medical testimony and no expert gives a medical opinion establishing a causal connection between the employment and the rupture of the aneurysm causing Mrs. Scott's death, manifest error has obviously been committed.
For the foregoing reasons I am of the opinion the judgment appealed from should be reversed.