BOUTALL, Judge.
This appeal is by an employer and its insurer from a judgment awarding workmen’s compensation benefits to the minor children of the deceased worker. The issues presented are the causal connection between the decedent’s death and his employment and the extent of the dependency of the two minors together with the appropriate amount of the award. We affirm the entitlement to benefits, but we amend the award.
Joseph E. Cunningham was a plumber employed by David Campbell Plumbing Company for approximately two years prior to his death at 29 years of age. On the morning of May 31,1976, he was ordered to proceed to an apartment located above a bar on Tulane and Galvez Avenues in the City of New Orleans to repair a toilet. Shortly thereafter his employer received a call from the apartment occupant informing him that something had happened to Cunningham and Maurice McDonald, one of the owners, responded. He found Cunningham on the floor in the bathroom at the base of the toilet in a semi-conscious condition, moaning and unable to talk. He called for emergency help and had Cunningham brought to Charity Hospital.
At Charity Hospital it was determined that Cunningham had sustained a sub-arachnoid hemorrhage caused by an aneurysm of the anterior communicating (cerebral) artery. Cunningham was treated conserva *1374 tively until it was thought that his condition had stabilized to a point that surgery would be justified. On June 17, 1976 surgery was performed but difficulties were encountered because of the size of the aneurysm, and Cunningham got progressively worse until he died on June 24, 1976 because of arterial spasm. Suit was brought by his divorced wife as natural tutrix of Cunningham’s two minor children alleging they were totally dependent upon him and thus entitled to the death benefits payable under R.S. 23:1231 and 1232.
The first issue is whether Cunningham’s death falls within the provisions of Louisiana’s Workmen Compensation Act so as to entitle his survivors to the benefits contemplated thereunder. Both the facts surrounding Cunningham’s accident and the medical evidence as to causal relationship are sparse, presenting no easy solution to the issues. The trial judge held that the death was a result of an injury sustained while the employee was in the course and scope of his employment and relied strongly upon the case of Francis v. Gerlach Meat Company, Inc., La.App., 319 So.2d 534, pointing to a strong similarity in factual situation therein, and quoting extensively from the discussion on page 536. The judge concludes his quotations with the following:
“ ‘3) The question then becomes not accident, but causal connection between the work-related activities of the employee and the thing (in this case the rupture of the aneurysm) that resulted in death or disability. See Malone, Louisiana Workmen’s Compensation Law and Practice, sec. 212, at Supp. page 75. Essentially this is a question of fact, the primary determination of which rests with the trial judge.’ ”
“The court therefore concludes that Mr. Cunningham died as a result of an injury sustained in the course and scope of his employment.”
The facts that caused Cunningham to be found lying on the floor semi-conscious next to the toilet he was to have repaired cannot be established with preciseness. Cunningham was working alone, and his condition resulted in a state of confusion such that apparently he was never able to relate exactly what happened. The apartment occupant was apparently not present at the time, and was not called as a witness. McDonald, the part owner of Cunningham’s employer got there after the event and understandably was busily occupied in attempting to save Cunningham’s life and could not testify with preciseness. However from the testimony that exists, we have been able to make some reasonable deductions, which we believe led the trial judge to his conclusions.
This job was Cunningham’s first job of the day, and he had driven the truck to the premises, had obviously spoken with the apartment occupant to determine which toilet was in need of repair, and had climbed the stairs to the apartment, carrying with him some tools. It is not known whether Cunningham carried with him his entire tool box, the witness having first testified that there were some tools on the floor near Cunningham’s body, but later on direct testimony indicating that he saw no tool-box and did not know whether any tools were about. McDonald could not recall the exact nature of the repairs that Cunningham was ordered to make, nor was he able to say whether any effort at these repairs had been made. He later sent another employee to finish the repairs, but that employee was not called as a witness. However, from McDonald’s testimony that there were tools on the floor near Cunningham’s body, it is reasonable to conclude that he was actually engaged in the repair of the toilet, and we point out that he had driven to the premises and at least had walked up the stairway carrying some tools, also in the course and scope of his employment. We agree with the trial judge that these facts would support a finding that the employee sustained a ruptured blood vessel while on the job and while actually performing physical labor for his employer as was found in Francis, supra.
We quote the following from the case of Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975) at page 39:
*1375 “2-4] The only remaining issue for determination is whether plaintiff proved by a preponderance of evidence that the fatal heart attack which occurred on the job was caused by decedent’s employment. Difficulty in proving causation arises from the fact that a pre-existing heart infirmity can produce disability at any moment irrespective of any outside influence. However, it is well settled that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when the accidental injury is caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Hence, it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. Further, it is not necessary that the accident resulting in disability or death be caused by extraordinary activities of the employee, or that said activities be the exclusive cause of the accidental injury. As previously stated, it is only necessary that the death or disability resulting from the accidental injury be caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Ferguson v. HDE, Inc. and Bertrand v. Coal Operators Casualty Company, supra.”
We do not perceive any basic difference between a heart attack and the rupture of the aneurysm. Of the two doctors who treated Cunningham at Charity Hospital, only the one could be found, and his deposition was taken in Jackson, Tennessee, and filed in the record by stipulation at trial. Dr. Glenn Barnett likened an aneurysm to a weak spot on an inner tube, which when extra pressure is placed upon it, may rupture and leak. Hypertension increases the possibility of leakage and stressful situations are frequent causes of bleeding. He related that a common time for the aneurysm to bleed is during sexual intercourse or after having a bowel movement. At the same time he noted that there are many people who wake up with them in the morning, who have a headache or who are simply walking down a street or driving a car, so it is impossible to say what actually happens except that the vessel gets weak enough and the blood comes out. At this point we must note of course that the decedent had actually driven his employer’s truck to the premises at which he was to accomplish his allotted job.
The defendants place considerable stress upon a hypothetical question asked the doctor, including the facts that “he was employed as a plumber. He was called upon to change out some parts of the toilet tank by his employer. I want you to assume there was no heavy lifting, bending, or unusual exertion involved”, asking the doctor if he could be “certain with any degree of medical certainty that this sub-arachnoid hemorrhage or the condition that led to his demise was in any way caused by his employment situation that I have related.” The doctor answered “As you related to me, my answer would be it would not have caused the sub-arachnoid hemorrhage.” Primarily, we note that no one is sure whether this man was undergoing any heavy lifting, bending, or unusual exertion. Basically however, when one considers the doctor’s testimony as a whole, it becomes apparent that this doctor is of the opinion that the rupture of an aneurysm of this sort could occur at any time, particularly one as large as was found to exist here, and that any factor may trigger the rupture and bleeding, and that even some unknown factor could trigger it, as witness his statement that the hemorrhage sometimes occur to people who are in bed or engaged in little or no physical activity. We are of the opinion that based upon such testimony, the trial judge could reach a reasonable conclusion that this worker’s job related activities caused the rupture. Although a myriad of things may cause the rupture of an aneurysm, this man’s rupture took place while he was actively engaged in his work, and we cannot say that it was not caused by stress incurred due to his work.
*1376 Accordingly, we conclude that Cunningham’s death is work-related, caused in the scope and course of his employment, entitling his survivors to the death benefits provided in R.S. 23:1231.
We now pass to a consideration of what those benefits should be.
At the time of his death Joseph Cunningham left two minor children, Tina Marie, 8, and Christopher Joseph, 4. Cunningham was divorced from the children’s mother, who had their custody. While the children lived with their mother, they spent most weekends from Friday through Sunday with their father. Cunningham provided all of the recreational facilities for them; provided clothing, medical care and support. Cunningham carried the children on his Federal Income Tax returns as dependents, and the evidence is quite clear that he did indeed furnish them the support necessary for their wellbeing. Accordingly, we find that the two children are the legal dependents of the employee, actually and wholly depending on his earnings for their support at the time of the death under the provisions of R.S. 23:1231.
There being two minor children in this case, the payment to them is computed and divided amongst them on the basis of 46V4 percentum of the employee’s wages. R.S. 23:1232(5). Cunningham was paid at the rate of $5.75 per hour for a 40 hour week, or a weekly wage of $230.00. 46.25% of that sum equals $106.37. This is in excess of the maximum provided in R.S. 23:1202 which fixes the maximum amount payable at this time at the sum of $85.00 per week. These payments are subject to the limitations imposed in R.S. 23:1233.
Accordingly, we amend the judgment in part to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Becky Cunningham, as natural tutrix of the minor children, Tina Marie and Christopher Joseph Cunningham, granting them workmen’s compensation benefits as a result of the death of their father Joseph E. Cunningham, and against defendants, American Mutual Insurance Company and David Campbell Plumbing Company, in the sum of $85.00 per week from June 24, 1976 until the time limitations imposed in R.S. 23:1233; all past due payments to be paid in one lump sum. The remainder of the judgment is affirmed.

AMENDED AND AFFIRMED.

SARTAIN, J., dissents with reasons.