917 So.2d 10 (2005)
LOUISIANA UNITED BUSINESS ASSOCIATION, SELF INSURERS' FUND
v.
Mureal BRIDGES, Individually and on Behalf of Her Children, Johnell M. Bridges and Rodney L. Bridges
No. 2004 CA 1440.
Court of Appeal of Louisiana, First Circuit.
June 10, 2005.
Rehearing Denied August 9, 2005.
*11 Stephen Brooks, Covington, Counsel for Plaintiff/Appellee Louisiana United Business Assoc.
Paul Billingsley, Hammond, Counsel for Defendant/Appellant Mureal Bridges, Individually, and On Behalf of Johnell M. Bridges and Rodney L. Bridges.
Before: WHIPPLE, DOWNING, and HUGHES, JJ.
*12 HUGHES, J.
This is an appeal by the legal spouse and legitimate children of a deceased worker, killed in an on-the-job accident, from a denial of workers' compensation death benefits. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
John L. Bridges died on May 10, 2002 following a jobsite accident while working for Brunt Construction, Inc. (Brunt). Survivors of Mr. Bridges included: his wife, Mureal Bridges, and their two sons, Rodney Lance Bridges (born November 29, 1988) and Johnell Michael Bridges (born March 1, 1993); and Mr. Bridges' girlfriend, Mary Brown, and their son, Jaylyn Bridges (born July 20, 1994).
Prior to the accident in March of 1994, Mrs. Bridges had filed an action for divorce in the 21st Judicial District Court. A support judgment was signed in June of 2001 granting to Mrs. Bridges $150.00 per month in alimony pendente lite and $565.45 in child support. An April 22, 2002 minute entry of the 21st Judicial District Court also appears in the record indicating that an order had been issued reducing Mr. Bridges' child support to $350.00 per month and granting to Mrs. Bridges a divorce on the basis of adultery, but no judgment was ever signed. On June 11, 2002 Mrs. Bridges filed a motion to dismiss her divorce action citing the death of Mr. Bridges.
After paying death benefits to Mrs. Bridges and all three of Mr. Bridges' children from May 11, 2002 through April 25, 2003, Louisiana United Business Association, Self-Insurers' Fund (LUBA) discontinued payments to Mrs. Bridges and her sons. On April 29, 2003 LUBA filed a disputed claim form with the Office of Workers' Compensation (OWC) contending it had overpaid benefits to Mrs. Bridges and her sons. Following a March 22, 2004 hearing before the OWC, judgment was rendered decreeing that Mrs. Bridges failed to prove "dependency upon the decedent," Rodney and Johnell Bridges were "partially actually dependent upon the earnings of the decedent," and that Jaylyn Bridges was "conclusively [p]resumed to have been wholly and actually dependent upon the decedent." The OWC further ruled that LUBA was entitled to an LSA-R.S. 23:1206 reduction and "as such the credit is greater than and exceeds the amount of any future death benefits which would otherwise be owed."
From this judgment Mrs. Bridges appealed individually and as tutrix of her minor sons, asserting the OWC erred: (1) in failing to find that the minors Johnell M. Bridges and Rodney L. Bridges were totally dependent and Mureal Bridges partially dependent on the late John L. Bridges, thus entitling them to full benefits pursuant to LSA-R.S. 23:1231, et seq.; (2) in granting Brunt and LUBA credit for payments made to Mrs. Bridges pursuant to a compromise between herself and Mary Brown; (3) in calculating death benefits under LSA-R.S. 23:1231 et seq.; and (4) in failing to grant statutory penalties and attorney fees to Mrs. Bridges.

DISCUSSION
Persons who are conclusively presumed to be entitled to recover workers' compensation death benefits are enumerated in LSA-R.S. 23:1251 as follows:
The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
(1) A surviving spouse upon a deceased spouse with whom he or she is *13 living at the time of the accident or death.
(2) A child under the age of eighteen years ... upon the parent with whom he is living at the time of the injury of the parent . . . .
When a claimant cannot qualify under LSA-R.S. 23:1251 for a conclusive determination of dependency, the question of dependency is a matter of proof, with the claimant bearing that burden of proof by a preponderance of the evidence. Castle v. Prudhomme Tank Truck Line, Inc., 417 So.2d 1205, 1207-8 (La.App. 1 Cir.), writ denied, 422 So.2d 423 (La.1982). See also Deshotel v. Guichard Operating Company, 2003-303, p. 3 (La.App. 3 Cir. 11/19/03), 861 So.2d 697, 698-99, affirmed, XXXX-XXXX (La.12/20/04), 916 So.2d 72. Dependency is determined in accordance with the facts as they may be at the time of the accident. LSA-R.S. 23:1252; Ceco Construction, L.L.C. v. Pennington, XXXX-XXXX, p. 2 (La.App. 1 Cir. 10/2/02), 836 So.2d 164, 165. See also Lathrop v. Hercules Transportation, 95-0936, p. 3 (La. App. 1 Cir. 12/15/95), 666 So.2d 395, 396.
The OWC in the instant case presumably rejected the contention of Mrs. Bridges that despite ongoing divorce proceedings and the fact that Mr. Bridges was openly living with his girlfriend, Mary Brown, that he continued to live with Mrs. Bridges' family from time to time. Thus, the dependency of Mrs. Bridges and her children was required to be proved by a preponderance of the evidence. Mrs. Bridges testified that in addition to the child support payments that were garnished from Mr. Bridges' wages received from Brunt, he gave her several hundred dollars in cash each month. In holding that neither Mrs. Bridges nor her children were wholly dependent upon Mr. Bridges for support, the OWC judge must have rejected this assertion for, as LUBA asserts, it is incredible that Mr. Bridges would make substantial cash payments to Mrs. Bridges without receiving a credit against his current child support obligation or his child support arrearage of more than $30,000.00.
Nevertheless, the additional testimony of Mrs. Bridges, corroborated by testimony of her own relatives as well as relatives of Mr. Bridges, was uncontradicted that Mr. Bridges gave his sons "pocket money" on a monthly basis and paid them for assisting him in his lawn care business, in sums of $10.00 to $20.00 per week. Further, it was uncontradicted that Mr. Bridges gave his mother and sister money to buy food, clothing, and gifts for Rodney Lance Bridges and Johnell Michael Bridges. Mr. Bridges also was seen frequently visiting the boys at Mrs. Bridges' home, and he frequently took them on weekends to visit with his family members, financially supporting them during those visits.
Moreover, the verified affidavit of income and expenses submitted into evidence by Mrs. Bridges showed that she had a net income at the time of Mr. Bridges' death of $874.38 while her monthly personal expenses exceeded $2,000.00 and expenses for Rodney Lance Bridges and Johnell Michael Bridges exceeded $600.00 per month.
Prior to his death, Mr. Bridges had been under court order to pay his wife $150.00 per month in alimony and $565.45 per month in child support. The payroll records of Brunt indicate the following payments were made from Mr. Bridges' wages: for September, October, November, and December of 2001 from gross pay slightly exceeding $1,300.00 per month, approximately $525.00 in support was deducted from his monthly earnings leaving little more than $550.00 in net pay to Mr. Bridges; in January of 2002 from gross *14 pay of $1,971.24, $827.47 in support was deducted leaving $902.15 in net pay to Mr. Bridges; in February, March, and April of 2002 from gross pay of approximately $1,700.00, about $650.00 in support was deducted each month leaving a monthly net pay of between $700.00 and $800.00 to Mr. Bridges; and before his May 10, 2002 death, of his $1,018.88 in May gross earnings, $274.81 in support was deducted from his pay, which left him $611.09 in net wages.
These uncontradicted figures establish that from September of 2001 until the time of his death, Mr. Bridges' child support payments provided the whole and actual support for Rodney Lance Bridges and Johnell Michael Bridges. Any finding to the contrary is manifestly erroneous in light of the fact that Mrs. Mureal Bridges' income was insufficient to meet her own monthly expenses. Accord Cunningham v. American Mutual Insurance Co., 390 So.2d 1372 (La.App. 4 Cir.1980), writ denied, 396 So.2d 929 (La.1981).
The evidence presented in this case is striking in that Mr. Bridges could scarcely have contributed as much to the support of Jaylyn as he did to the support of Rodney Lance Bridges and Johnell Michael Bridges after the deduction from his gross earnings of child support payments to Mrs. Bridges, averaging $600.00 per month, and after meeting his own personal expenses from a net take-home pay averaging approximately $700.00 per month.
Thus, the OWC erred in failing to find Rodney Lance Bridges and Johnell Michael Bridges wholly and actually dependent upon the deceased John L. Bridges and in failing to award Rodney Lance Bridges and Johnell Michael Bridges workers' compensation death benefits. Accordingly, a remand is necessary for determination of the amount of benefits owed.
Furthermore, we believe the OWC erred in failing to find Mrs. Mureal Bridges was partially actually dependent on the support of John L. Bridges. There was a judicial order of support in place at the time of Mr. Bridges' death in favor of Mrs. Bridges for alimony. Mr. Bridges' payroll records indicated that he had in fact made support payments, although not to the extent ordered by the court. While court-ordered support alone does not suffice for a determination of dependency, sporadic or irregular payments under court order for support have been considered proof of dependency. Dean v. K-Mart Corp., 97-2850, p. 9 (La.App. 4 Cir. 7/29/98), 720 So.2d 349, 354, writ denied, 98-2314 (La.11/13/98), 731 So.2d 265, citing, Lathrop v. Hercules Transportation, 95-0936 at p. 4, 666 So.2d at 397, Fontenot v. Annelida Acres, Inc., 302 So.2d 690, 696 (La.App. 3 Cir.1974), and H. Alston Johnson, III, 14 La. Civil Law Treatise: Workers' Compensation Law and Practice, § 304 at 26 (3d ed.1994). Thus, even though in the instant case, Mr. Bridges' alimony payments may have been sporadic, such payments establish that Mrs. Bridges was partially actually dependent on the support of Mr. Bridges, and death benefits should have been awarded accordingly. Therefore, on remand of this matter, the OWC is directed to determine the amount of benefits due Mrs. Bridges pursuant to LSA-R.S. 23:1231(B)(1).
On the issue of penalties and attorney fees, the employer's own records clearly reflected that John L. Bridges contributed nearly fifty percent of his take-home pay to the support of Rodney Lance Bridges and Johnell Michael Bridges and in some measure to Mrs. Bridges. Furthermore, Mrs. Bridges testified that *15 LUBA made no inquiry of her regarding her domestic situation before terminating death benefits.[1] Moreover, LUBA presented no testimony whatsoever to demonstrate what efforts it made, if any, to ascertain the extent to which Mrs. Mureal Bridges, Rodney Lance Bridges, and Johnell Michael Bridges were dependent on the support of John L. Bridges. Consequently, penalties and attorney fees are due in this case and should be assessed by the OWC on remand of this matter.

CONCLUSION
For the reasons assigned herein, the judgment of the OWC finding Rodney Lance Bridges and Johnell Michael Bridges "partially actually dependent" upon John L. Bridges is reversed and judgment is hereby rendered decreeing Rodney Lance Bridges and Johnell Michael Bridges to be actually and wholly dependent upon John L. Bridges. Further, the finding that Mureal Bridges failed to establish dependency is reversed, and Mureal Bridges is hereby declared to be partially actually dependent on John L. Bridges. Further, the portion of the judgment denying Mureal Bridges' claims for penalties and attorney fees is reversed. The matter is remanded to the Office of Workers' Compensation for determination of benefits due and for the assessment of penalties and attorney fees. All costs of this appeal are assessed to Louisiana United Business Association, Self-Insurers' Fund.
REVERSED AND REMANDED.
NOTES
[1] Documentary evidence in the record revealed that death benefits were paid in the following weekly amounts from May 11, 2002 through April 25, 2003: $168.84 to Rodney Lance Bridges and Johnell Michael Bridges; $44.70 to Mrs. Bridges; and $84.82 to Jaylyn Bridges. After April 25, 2003, neither Mrs. Bridges nor her sons received any further benefits. However, Jaylyn Bridges was paid weekly benefits of $297.95 from April 26, 2003 through June 13, 2003, with a lump sum of $10,656.50 paid to Jaylyn on April 25, 2003 for prior underpayments. Further, a settlement was reached with Mary Brown for the benefit of Jaylyn for the following amounts: a lump sum of $40,000.00 to be paid to Mary Brown on behalf of Jaylyn; monthly benefits from August 1, 2003 through July 1, 2012 in the amount of $625.00; and direct payments to Jaylyn of $9,000.00 on August 1, 2012, $11,000.00 on August 1, 2014, and $12,000.00 on August 1, 2017.