343 So.2d 339 (1977)
Henry FIELDS, Administrator of the Estate of William S. Fields and Anita Fields, Tutrix of the minor, William Kyle Fields, Plaintiffs-Appellants,
v.
SPERRY RAND CORPORATION and the Travelers Insurance Company, Defendants-Appellees.
No. 13158.
Court of Appeal of Louisiana, Second Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.[*]
Writs Refused May 26, 1977.
*340 Campbell, Campbell & Johnson by John T. Campbell, Minden, for plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by William Timothy Allen, III, Shreveport, for defendants-appellees.
Before PRICE, HALL and JONES, JJ.
En Banc. Rehearing Denied March 21, 1977.[*]
HALL, Judge.
This is a workmen's compensation case. The deceased workman suffered a heart attack on the job resulting in disability. About eight months later he suffered a second heart attack at home resulting in death. The administrator of his estate sued the employer and its insurer for disability benefits from the date of the first attack to date of death. The tutrix of the decedent's minor child sued for death benefits from the date of death. The defendants denied liability and, after trial, the district court rejected plaintiffs' demands. We reverse and award both disability and death benefits.
Issues
The issues are:
(1) Was the first heart attack an injury by accident arising out of and in the course of the decedent's employment, entitling him to disability benefits?
(2) If so, was decedent's death from the second heart attack a consequence of the on-the-job accidental injury so as to entitle his dependent child to death benefits?
Facts
William S. Fields, age 41, was employed by Sperry Rand Corporation as a shot blast worker on the assembly line of defendant's ordnance plant in Webster Parish. He had been working for Sperry Rand for about two months at the time of the first heart attack on June 9, 1972. Fields also worked as a self-employed automobile mechanic at a service station in Shreveport.
Fields' job at the ordnance plant required him to pull 80 pound "bullets" from the main conveyor belt onto a smaller conveyor which runs through the shot blast machine, and then return them to the main conveyor belt. He handled one bullet every 25 or 30 seconds. He was not required to lift the full weight of the bullets but had to pick up one end. The work was strenuous and hot. The temperature in the area where he worked was at least ten degrees hotter than outside.
On the day of the first heart attack, a summer day, Fields reported to work about 3:30 in the afternoon, having already worked most of the day at the service station. He complained to his foreman of having a little indigestion. After he had been at work about 40 minutes, it was noticed that he was pale, sweating profusely, and complained of pain in his chest and shortness of breath. At the foreman's suggestion he went outside for some fresh air and then returned to work on the assembly line. A few minutes later, when he was still not feeling well, it was decided that he should go to the first aid station. He complained to the nurse of chest pains and told her he thought he got overheated. His clothing *341 was saturated with perspiration and he was pale. She had him lie down, took his blood pressure, which was low, gave him salt tablets, and applied ice packs to bring his body temperature down. Fields stayed at the first aid station until about 8:00 p.m. when he went home with instructions from the nurse to see his doctor if he continued to feel badly.
The next day Fields went to see Dr. Jason Sanders, who was out of town, and was admitted to the Schumpert Hospital and placed in intensive care by Dr. Knapp, who was handling Dr. Sanders' patients while he was away. Dr. Sanders saw Fields within the next few days and diagnosed his condition as myocardial infarction due to arteriosclerotic heart disease with a coronary occlusion. This diagnosis was confirmed by Dr. Herbert Tucker, a heart specialist, who also examined Fields on one occasion. Dr. Sanders described the arteriosclerotic myocardial infarction as probably massive in character and defined massive as meaning 20% to 25% of the heart muscle was affected. Infarction is the destruction of the muscle or tissue of the heart due to the fact that the blood supply has been cut off to that particular tissue. Arteriosclerosis is hardening of the arteries which is generally a process which takes place over a period of years. An occlusion is usually caused by plaque which breaks off and blocks the flow of blood through the artery to the heart.
Fields was discharged from the hospital on June 20, after about 11 days. The doctor told him to take a little exercise, not to overdo it, and to come back in about two weeks.
Dr. Sanders subsequently saw Fields in his office on July 3, July 17 and October 19. After the last visit, Dr. Sanders was of the opinion Fields was still unable to return to work and the doctor advised him not to do so. Dr. Sanders felt like it would be at least three more months before Fields would be able to return to work and then maybe not to the heavy work he had been doing. He did not see Fields again after October 19.
About a month after Fields got out of the hospital he returned to doing automobile mechanic work at the service station but not at the same pace as previously and he avoided heavy work. During the next several months persons who saw Fields observed that he looked pale and tired, suffered from dizzy spells, and was generally in a poor state of health.
During the night of February 28, 1973, Fields died at home. He was not attended by a physician. The coroner listed the cause of death on the death certificate as myocardial infarction due to arteriosclerotic heart disease.
Fields was survived by a widow from whom he was legally separated and a four year old son. The mother had custody of the child and Fields was under a court order to pay child support of $30 per week, but was actually paying $15 per week. The mother was employed as a nursing instructor at an annual salary of more than $7,000 per year.
This suit was filed June 7, 1973.
Disability Benefits
Compensation benefits are due if an employee receives personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031.
"Accident" and "injury" are defined by LSA-R.S. 23:1021(1) and (7). It is well settled in Louisiana jurisprudence that a heart attack is "injury by accident." Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Barnes v. City of New Orleans, 322 So.2d 821 (La.App. 4th Cir. 1976), writ denied 325 So.2d 584 (1976). See also Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976)acute bronchitis; Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975)stroke; Ferguson v. HDE, Inc., 270 So.2d 867 (La. 1972)stroke; Francis v. Gerlach Meat Company, Inc., 319 So.2d 534 (La.App. 2d Cir. 1975)ruptured intracranial aneurysm.
*342 Louisiana has adopted the accidental result approach as distinguished from the accidental cause approach in determining whether there is injury by accident. Louisiana is among many jurisdictions that look to the employee, that is, the result to the employee, to determine whether there was an unexpected and catastrophic effect upon him. See Larson's Workmen's Compensation Law § 37.20. Extraordinary physical stress and strain is not essential to the definition of disabling accident. When the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. An injury is accidental if it is unexpected and unforeseen and happens suddenly and violently, producing objective symptoms of injury at the time. Ferguson v. HDE, Inc., supra and the other cases cited above.
It is equally well settled, however, that disability is compensable only if it results from a work-related accident. The question presented is generally factual in nature: is plaintiff's disability causally related to an employment accident? Prim v. City of Shreveport, 297 So.2d 421 (La.1974), and the other cases cited above. It is not necessary that the accident be caused by extraordinary activities of an employee or that the employment activities be the exclusive cause of an accidental injury. It is only necessary that the accidental injury be caused, precipitated, aggravated or contributed to by the actions, exertion or other factors directly connected with the employment. It is immaterial that the disability could have been brought on by causes other than a work-related accident. Parks v. Insurance Company of North America, supra, and other cases cited above.
Roussel recognizes the difficulty in proving causation in a heart attack case, arising from the fact that a preexisting heart infirmity can produce disability irrespective of any outside influence. Roussel recognizes that it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. It is only necessary that the death or disability resulting from the accidental injury be caused or precipitated by the usual and customary actions, exertions or other factors directly connected with the employment.
While adhering to the preponderance of the evidence rule, the court in Roussel found that the medical testimony established the myocardial infarction "could have been caused or precipitated by" the decedent's duties as a machinist and "causal connection was thus clearly established by a preponderance of the evidence." The holding takes a realistic approach to the difficulty posed by the vagueness of the medical testimony in most of the heart attack and similar cases.
The cases are not clear as to whether the causation inquiry is part of the "accident" determination or is part of the "arising out of" determination. Ferguson and Prim indicate the former. Roussel and Parks indicate the latter. In any event, the requirement of causal relationship between the work activities and the injury remains a viable part of the decisionmaking process. Even in Barnes, which awarded benefits for the death of a clerical employee who worked in a relaxed atmosphere in an air conditioned office, whose work entailed only the ordinary necessity of getting something done, and who died at home after experiencing chest pains at work, the court made the determination based on medical evidence not discussed in detail, that the work caused or contributed to the fatal infarction.
In the case now before this court, the medical evidence, as well as ordinary judgment based on experience and a reading of the numerous heart attack cases in the jurisprudence, leaves no doubt that Fields' employment activities caused, precipitated, or contributed to the heart attack. Fields was doing strenuous work under hot conditions. The symptomschest pains, dizziness, profuse sweating, low blood pressuremanifested themselves on the job. The fact that he had symptoms of indigestion, which can be a symptom of an oncoming *343 heart attack, at the time he reported to work is of no consequence.
Dr. Sanders testified unequivocally that in his opinion the heart attack occurred while Fields was on the job. Dr. Sanders testified that stress is probably the primary cause of such heart attacks, that Fields was under a stressful situation and that his work was an aggravating factor. His work aggravated his preexisting condition.
The conclusion of this court is that the decedent suffered an injury by accident arising out of and in the course of his employment and the administrator of his estate is entitled to recover the disability benefits to which he was entitled from the date of the accident to the date of his death, and medical and funeral expenses.
The administrator of decedent's estate prayed for $49 per week, the statutory maximum at the time of the accident, from June 10,1972 to February 28, 1973, a period of 37 weeks. The administrator is, therefore, entitled to $1,813, with legal interest on each weekly payment from its due date until paid, plus decedent's medical bills and funeral expenses of $2,062.68, with legal interest thereon from date of judicial demand until paid, for a total of $3,875.68, plus interest.
Death Benefits
The issue of entitlement to death benefits is more difficult to resolve. Did the on-thejob heart attack cause or contribute significantly to Fields' death approximately eight months later? Did his death result from the on-the-job accident? Was his second heart attack a natural and expected consequence of the first heart attack?
It is established that an employer is liable for workmen's compensation when the initial injury is aggravated by medical complications that set in following the injury, whether due to improper medical treatment or otherwise. Deville v. Townsend Bros. Construction Company, 284 So.2d 110 (La.App. 3d Cir. 1973); Andrus v. Great American Insurance Company, 161 So.2d 109 (La.App. 3d Cir. 1964), Malone, Louisiana Workmen's Compensation Law and Practice, § 233.
This court recently dealt with a similar causation issue in a workmen's compensation case. Carter v. Rockwood Insurance Company, 341 So.2d 595 (La.App. 2d Cir. 1977). In that case the employee sustained an on-the-job knee injury and about one and one-half years later fell at home sustaining additional injuries. This court found that the second accident was causally related to the first accident and injury and awarded compensation benefits for the disability resulting from the combination of the two accidents and injuries. It was held that post-accident complications may be compensable if they are causally related to an on-the-job accident. The second accident was a natural and expectable consequence of the work-related accident and the disability resulting from the combination of the two accidents was compensable. Causation of the second accident and resulting disability by the previous on-the-job accident was clearly established. The nature of the original injury was such that the chance of subsequent reinjury was a foreseeable risk and an expectable consequence. The second accident resulted during normal activity and was a reasonably foreseeable and natural consequence of the work-related injury.
In the case now before the court we find that the second heart attack and resulting death of the decedent was caused or contributed to by the first heart attack. The second heart attack was a natural, foreseeable, and expectable consequence of the work-related heart attack and the employee's death resulting therefrom is compensable.
The medical testimony supports this conclusion. Dr. Sanders testified that the first infarction caused the loss of 20% to 25% of the heart muscle or tissue. The doctor expressed the opinion that the second heart attack could have indirectly been related to the first heart attack. Because of the previous damage to the heart the doctor was of the opinion that it would take a lesser strain to produce a second heart attack.
*344 The doctor stated "there was a definite correlation between the first heart attack and the second, because I feel a person that has one heart attack is more likely to have a second one, than a person that never has had one at all." Although the doctor stated in a letter that the employee's work was not the cause of his death, the doctor explained in the letter that the work did aggravate the employee's heart condition. Dr. Sanders testified that Fields had a damaged heart that never did function like it did previous to the attack, and that his condition put his heart under a stress and strain which would cause further damage to the heart. The doctor stated that the first myocardial infarction was the predisposing cause to the second one. The doctor spoke of the causal relationship as a "probability."
Fields experienced a massive myocardial infarction damaging 25% of his heart muscle in an accidental injury arising out of and in the course of his employment. He never fully recovered from the first heart attack and was still disabled from it at the time of his second heart attack. The medical evidence establishes that the first heart attack made it more likely that he would have a second one, that a greater stress and strain was placed on his heart because of the damage from the first attack, and there was at least an indirect connection between the two. The conclusion of this court is that it is more probable than not that the second heart attack and Fields' death was caused by and contributed to by the on-thejob accident and injury and that the second heart attack and death was a natural and expectable consequence of the first injury.
The dependent son is entitled to death benefits. The minor child was partially dependent upon the decedent. His right to benefits is governed by LSA-R.S. 23:1231, which states that "the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident." In this case, the decedent contributed approximately 13% of his income to the support of his child. The child is, therefore, entitled to 13% of what he would receive if he had been wholly dependent. Since this amount is well below the statutory minimum of $12.50 per week in effect at the time of Fields' death, the child is entitled to $12.50 per week. LSA-R.S. 23:1202; Fontenot v. Annelida Acres, Inc., 302 So.2d 690 (La.App. 3d Cir. 1974).
The minor child is entitled to $12.50 per week for 500 weeks, less a credit for the $1,813 payable to the estate. The credit is dollar for dollar rather than week for week as claimed in the petition. LSA-R.S. 23:1223; Allen v. Insurance Company of North America, 216 So.2d 400 (La.App. 4th Cir. 1968). The credit of $1,813 equals 145 weeks at $12.50 per week and will be applied to reduce the number of weeks for which payments should be made to the child. The minor is entitled to be paid $12.50 per week for 355 weeks, commencing March 7, 1973, with legal interest on any past due weekly payment from its due date until paid.
Decree
For the reasons assigned, the judgment of the district court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of Henry Fields, Administrator of the Estate of William S. Fields, and against Sperry Rand Corporation and The Travelers Insurance Company, in solido, for workmen's compensation benefits at the rate of $49 per week beginning June 10, 1972 and continuing through February 18, 1973, a period of 37 weeks and a total of $1,813, with legal interest on each weekly payment from its due date until paid; and for medical, hospital and funeral expenses in the amount of $2,062.68, together with legal interest on said amount from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Anita Fields, Tutrix of the minor, William Kyle Fields, and against Sperry *345 Rand Corporation and The Travelers Insurance Company, in solido, for workmen's compensation death benefits at the rate of $12.50 per week beginning March 7, 1973 and continuing for a period of 355 weeks, with legal interest on each past due weekly payment from its due date until paid.
It is further ordered, adjudged and decreed that all costs of this proceeding, including expert witness fees and cost of appeal, are assessed to the defendants, in solido.
Reversed and rendered.
NOTES
[*] MARVIN, J., took no part in en banc denial of rehearing.