350 So.2d 274 (1977)
Linda Fenton, widow of Ferrel J. JACOB
v.
GODCHAUX-HENDERSON SUGAR COMPANY, INC. and Travelers Insurance Company.
No. 8636.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1977.
Rehearing Denied October 12, 1977.
Writ Refused November 23, 1977.
*275 Carville & Edrington, Richard L. Edrington, La Place, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendant-appellant, Godchaux-Henderson Sugar Co., Inc.
Leach, Grossel-Rossi & Paysse, William G. Tabb, III, New Orleans, for defendant-appellant, Travelers Ins. Co.
Before LEMMON, GULOTTA and BEER, JJ.
GULOTTA, Judge.
Defendants appeal from an award for death benefits in a workmen's compensation case. Simply stated, it is defendants' contention that plaintiff failed to carry the burden of proof required to establish that a fatal heart attack (myocardial infarction) suffered by the electrician-employee on the job site, before commencement of work activities, was work-related. We disagree. Accordingly, we affirm.
On the day of the fatal heart attack, June 17, 1975, Ferrel J. Jacob reported for work at the Godchaux-Henderson Sugar Company shortly before 7:00 a. m. His job as an electrician required running conduits,[1] installing new equipment and doing maintenance work and involved climbing stairs and ladders as well as lifting and working with electrical motors. According to a coworker, Randall Payne, upon arriving at the electrical shop at about 6:45 a. m., he saw the decedent in the shop. A few minutes after the 7:00 a. m. starting time, both the coworker and the decedent went to the Char House, a building on the premises, where they were to continue installation of conduits on which they had worked the previous day. After they had been seated about ten minutes in the Char House and before the decedent performed any duties in connection with his work, Jacob commenced to complain of pain in the chest. They then walked back to the electrical shop, a distance of about 100 yards, and shortly thereafter the decedent reported to the Godchaux-Henderson first aid station. After Jacob had been seen by a doctor in the first aid room, he died in an ambulance en route to the Lutcher Hospital.
According to the coworker, Jacob had complained of chest pains, off and on, while at work, during a two-week period preceding the fatal heart attack. This coworker testified that the decedent had complained of pain just about once each working day and on most occasions they had continued with their customary duties, however, in some instances, because of decedent's pain, they had stopped working.
Although not considered by the trial judge, but admitted by way of proffer,[2] is the testimony of the same coworker who stated that the decedent had informed him that while mowing grass and spreading sand on a weekend approximately 10 days before the fatal attack, the decedent had felt the onset of chest pain. Decedent's fatal heart attack occurred on Tuesday, *276 June 17, 1975, and the chest pain occurred on the June 8-9, 1975 weekend. This witness further stated that Jacob had experienced chest pain while at work on the day before his death.
Another coworker who had worked with decedent on the Saturday night before the Tuesday fatal heart attack testified that Jacob had experienced pain on that occasion while at work. This witness explained that they had been installing an 80-100 pound motor which they were required to lift to a height of approximately 2½ feet above waist level. The coworker recalled that the decedent had complained of pain while they were transporting the motor to a platform to be installed but before they had lifted the motor. According to this witness, although Jacob complained of pain, he continued to do the work. Furthermore, the job that they were doing on that occasion was not out of the ordinary.
Plaintiff, decedent's widow, testified that Jacob had not complained of chest pain on the weekend that he was spreading sand and mowing the lawn. She stated that her husband had never complained of any chest pain. According to her testimony, although Jacob had a history of high blood pressure, this was controlled with the use of medication.
Dr. R. C. Albrecht, the decedent's treating physician, whose practice involved, to some extent, referrals of employees of industries located in St. John the Baptist Parish, explained, in deposition, that Jacob had a history of hypertension dating back to April, 1970. Dr. Albrecht saw the employee at the first aid room shortly after the heart attack. In answer to a hypothetical question whether the heart attack was caused by, contributed to or accelerated by decedent's employment, the doctor indicated that because statistics show that as many heart attacks are suffered in hospitals or at home while resting as occur on the job while working, he did not feel that a person's job would cause an attack. However, he pointed out that if the onset of chest pain occurred while a person was working or doing his job, it would be reasonable to assume that the work contributed to his heart attack. He added that if the onset occurred other than while a person is working at various duties not requiring strength, he would presume that the attack was not work-related. The doctor went on to say that if pain is experienced only when a person is actively working and not under other circumstances, it is safe to assume that the work is causing the symptoms. According to the doctor, if symptoms occurred during physical activity, it is safe to assume that the cause was this activity. The doctor added, however, that he was of the opinion that if Jacob had remained home that day from work, he would still have had a heart attack.
Dr. Melvyn F. Kossover, an internist, when confronted, in deposition, with a hypothetical question setting forth Jacob's history of chest pain while spreading sand, which pain subsequently continued during his normal activities on the job, stated:
"A Chest pains are a pretty good indication of temporary or possible permanent damage to the heart. * * * So that if he had the onset of chest pains with this sand lifting situation, this could well be the first sign of damage to the heart. If the chest pains continued as he was doing his regular activities and the chest pains were the same type of pain, basically, then you can certainly say that the usual activities would further any damage that occurred as a result of the initial problem."
The doctor went on to say that if symptoms continued during normal work activities, after the initial chest pain, it is more than likely that increased damage would result if the person had heart disease or arteriosclerosis. The death certificate indicated that myocardial infarction was the primary cause of death with a contributing cause of hypertensive cardiovascular disease. The doctor further indicated that if chest pains occurred away from work and continued during the everyday work activities of an electrician and he had not previously had pain for many years while involved in the *277 same activities, it is fair to conclude that not only was the heart continuing to be damaged but that in fact the normal customary activities were exasperating the heart. The doctor finally concluded that the usual activities could cause further myocardial damage.
It is well-established that death resulting from a heart attack is an "accident" and "injury" within the meaning of the Workmen's Compensation Act, LSA-R.S. 23:1021(1)(6); LSA-R.S. 23:1031; Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975); Barnes v. City of New Orleans, 322 So.2d 821 (La.App. 4th Cir. 1975), application denied, 325 So.2d 584 (La. 1976); Fields v. Sperry Rand Corporation, 343 So.2d 339 (La.App. 2d Cir. 1977). It is equally well-established, however, that disability or death benefits are compensable only if the disability or death results from a work-related accident. This question is generally one of fact. See Roussel v. Colonial Sugars Company, supra; Fields v. Sperry Rand Corporation, supra; Prim v. City of Shreveport, 297 So.2d 421 (La. 1974). In this connection, death benefits are due in compensation cases involving heart attacks, whether or not the heart condition is pre-existing, when the attack is caused, precipitated, accelerated or aggravated by the usual and customary activities directly connected with the employment. See Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975); Roussel v. Colonial Sugars Company, supra; Vicknair v. Avondale Shipyards, Inc., 220 So.2d 580 (La. App. 4th Cir. 1969), cert. denied, 254 La. 285, 223 So.2d 409 (1969); Ferguson v. HDE, Inc., 264 La. 204, 270 So.2d 867 (1972). The Louisiana Supreme Court in the Roussel case stated at page 39:
"* * * Hence, it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. Further, it is not necessary that the accident resulting in disability or death be caused by extraordinary activities of the employee, or that said activities be the exclusive cause of the accidental injury. As previously stated, it is only necessary that the death or disability resulting from the accidental injury be caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. * * *"
Applying the pronouncements in the Roussel case to the facts of our case, we cannot say the interpretation of the medical and lay evidence by the trial judge (resulting in a finding that the heart attack and death were work-related) is unreasonable. Although our interpretation of the evidence may lead to a different result, we cannot substitute our conclusions for the reasonable conclusions of the trial judge. The record supports the factual findings of the trial judge. Under these circumstances, his findings will not be disturbed. See Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
Accordingly, the judgment is affirmed.
AFFIRMED.
BEER, J., concurs.
BEER, Judge, concurring.
In view of Roussel v. Colonial Sugars Company, supra, the majority opinion is cogent and unassailable. Nevertheless, my concern remains unresolved.
Somewhere along the way, heart attacks resulting in death at the job site have been placed in juxtaposition with course and scope of employment, so that a virtually irrebuttable presumptionat least from any practical evidentiary standpointnow exists in favor of the heirs of the stricken employee.
What is the result? The employer faces an exculpatory evidentiary burden that he cannot possibly hope to carry. Rendered essentially meaningless in the wake of this sociological achievement is the apparently antiquated rule regarding plaintiff's burden of proof. Worst of all, it is paid lip service and, thus, more effectively denuded than if totally ignored.
NOTES
[1] A conduit is described in the record as a pipe with wires running through it.
[2] One of defendants' complaints on appeal is that the trial judge erroneously failed to consider that part of a coworker's testimony relating to decedent's statements to the coworker that decedent's chest pain started over a weekend while decedent was doing yard work. We are in agreement with defendants' contention and have considered the proffered testimony as competent evidence.