398 So.2d 1182 (1981)
Linda H. McDONALD
v.
INTERNATIONAL PAPER COMPANY.
No. 14534.
Court of Appeal of Louisiana, Second Circuit.
April 27, 1981.
*1183 Campbell, Campbell & Johnson by John T. Campbell and James M. Johnson, Minden, for plaintiff-appellee.
Madison, Files, Garrett & Brandon by Charles L. Hamaker, Theus, Grisham, Davis & Leigh by J. Bachman Lee, Monroe, for defendant-appellant.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
Defendant, International Paper Co., appeals a judgment adjudicating it liable for worker's compensation benefits for the widow and children of its deceased employee, Marion McDonald, who died of a heart attack at the age of 36. The judgment also awarded penalties and attorney's fees.
McDonald had been employed at defendant's Springhill Paper Mill for approximately 17 years. At the time of his death his job was classified as Washer First Helper in the washer room of the pulp mill.
On February 5, 1979, decedent was working the graveyard shift and reported to defendant's mill at 10:20 p. m. to commence *1184 his duties. He walked some 150 yards up and down two small flights of steps to the Tour Foreman's office where he commenced to fill in his time card. Decedent was required to report to the Tour Foreman's office for the purpose of receiving any extraordinary instructions relating to the work on the upcoming shift. While sitting in this office he became sick and departed for the first aid room after having advised the operator on his shift who was his immediate supervisor that he was going to the first aid room. Decedent collapsed just before reaching the first aid room and was carried by ambulance to a hospital in Springhill where he was immediately pronounced dead on arrival.
Defendant assigns as error the trial court's finding that the heart attack was related to decedent's employment. Defendant also contents that if the heart attack was employment related, that the award of penalties and attorney's fees was error because defendant was justified in not voluntarily paying compensation benefits because decedent had performed no work prior to the occurrence of the heart attack.
A heart attack is an accidental injury within the contemplation of LSA-R.S. 23:1021(1) and (7), and LSA-R.S. 23:1031. In order for the heart attack to be compensable the preponderance of the evidence must show that it was caused, precipitated or contributed to by factors directly related to the employment. Roussel v. Colonial Sugars Company, 318 So.2d 37 (La. 1975); Barnes v. City of New Orleans, 322 So.2d 821 (La.App. 4th Cir. 1975); Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir. 1977); Jacob v. Godchaux-Henderson Sugar Co., Inc., 350 So.2d 274 (La.App. 4th Cir. 1977).
The guidelines for proving causal connection between the heart attack and the employment as set forth in Roussel, supra, are as follows:
"The only remaining issue for determination is whether plaintiff proved by a preponderance of evidence that the fatal heart attack which occurred on the job was caused by decedent's employment. Difficulty in proving causation arises from the fact that a pre-existing heart infirmity can produce disability at any moment irrespective of any outside influence. However, it is well settled that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when the accidental injury is caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment. Hence, it is of no significance that the heart attack could have occurred at another time and place if, in fact, the accidental injury occurred on the job. Further, it is not necessary that the accident resulting in disability or death be caused by extraordinary activities of the employee or that said activities be the exclusive cause of the accidental injury. As previously stated, it is only necessary that the death or disability resulting from the accidental injury be caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment." Id. p. 39. [emphasis supplied]
Included in the trial judge's excellent reasons for judgment are the following findings which are fully supported by the record:
"Several months prior to Mr. McDonald's death, International Paper Company had announced that the Springhill Mill would be closed. It was apparent to Mrs. McDonald and other co-workers and friends that Mr. McDonald was worried about the closing of the mill and the possibility of the termination of his job. The evidence showed that during the past several weeks prior to his death, there was increased difficulty at the mill caused by the crews being shorthanded and the personnel not being as diligent with their work and also caused by increased difficulty with old equipment needing increased maintenance. Mr. McDonald supervised nine men during his work, and when these men were absent *1185 or were taking a break, he took their place and performed work for them. The washer area where he sometimes worked was subject to extreme hot temperatures up to 130. Mr. McDonald was a conscientious worker who felt responsible for the performance of the necessary tasks at work, and all of these factors placed considerable physical and emotional strain on him, particularly within the last week or ten days prior to his death. During that period his co-workers noticed several changes in him indicating he was under mental and physical strain, and during that period he complained on occasion of chest pains and his co-workers noticed that he became withdrawn within the last week or so before his death.
Even a defense witness, Leroy Shelley, testified that the job performed by Mr. McDonald was stressful at times and that he was under strain caused by the men and the machinery. Mr. Shelley testified that there was stress on himself as well as on Mr. McDonald."
An autopsy was performed on the body of decedent by Dr. McCormick, a forensic pathologist, who found that decedent had died from a myocardial infarction. He found that decedent was suffering from arteriosclerosis of several months duration and that he had unusually small blood vessels. This pathologist after examining the muscle of the heart expressed the opinion that the tissue of the heart had been dying for several days and perhaps as long as a week before decedent's death.
Dr. McCormick testified there were six principal causes for myocardial infarction in relatively young men. These were hypertension, heredity, excessive smoking, high blood cholesterol levels, stress, and diabetes.
There had been a blood work-up on decedent several weeks before his death and his blood did not have a high cholesterol level. During this examination decedent was found to have no high blood pressure or diabetes. Based upon this information Dr. McCormick eliminated high blood cholesterol, diabetes, and hypertension as a contributing cause of decedent's heart attack. Evidence was introduced to establish that there was no history of heart attacks in decedent's family, and on this basis the heredity factor was eliminated. Evidence established that decedent only smoked a pack of cigarettes a day, and Dr. McCormick discounted decedent's smoking habit as a cause for his heart attack.
Dr. McCormick was given the facts relating to the circumstances under which McDonald had been working and expressed the opinion that the myocardial infarction was due to the physical and mental stress to which McDonald was subjected by his employment. He stated that the stress which decedent had undergone during the several days before his death precipitated the occurrence of the death of the muscles of the heart:
"A. No sir, because what I'm going by is I think the oldest infarction there is several days, therefore, I think that the occlusion of the vessel occurred several days before his death and that subsequent to that time the heart muscles had been dying."
It was therefore his opinion that the stress which decedent had undergone performing the work for defendant in the several days before the actual occurrence of decedent's death was a contributing factor to decedent's terminal heart attack. Dr. McCormick expressed the opinion that the circumstances that existed on the night of Feb. 5 and the activity of decedent's reporting to work and filling in his time card on the night of his death had not contributed to decedent's fatal myocardial infarction.
Dr. Bridges also testified that stress was one of the principal causes of myocardial infarction in people of decedent's age. He stated that stress affects the blood chemistry and causes the formation of clots. He stated that stress caused the blood vessels to go into spasms and that the combination of clots and the spasms in the blood vessels precipitated the occlusion of the blood vessels and brought about the infarction.
Dr. Bridges had treated over 300 myocardial infarctions and testified that he believed the stress to which decedent was *1186 subjected brought about his fatal myocardial infarction. This physician was of the opinion that the stress which McDonald had been subjected to for a number of days prior to his death precipitated the change in McDonald's blood chemistry which resulted in the formation of the clot which occluded the blood vessel at the time of his death. Bridges, however, felt that the actual occlusion occurred on the night of McDonald's death because McDonald felt himself in a stressful situation as he approached his evening shift and that this stress caused the blood vessels to become spastic and the occlusion then occurred that brought about the myocardial infarction.
In the case of Jacob v. Godchaux, supra, work activity which occurred during days preceding a fatal heart attack which occurred on the employer's premises were considered in establishing that the heart attack was work-related. In Barnes v. City of New Orleans, supra, an employee who began having chest pains while performing clerical work and died at home of a myocardial infarction the following day was found to have sustained a work-related heart attack.
The testimony of each of the doctors establishes that the stress related to decedent's activities for the several days immediately preceding his death contributed to decedent's fatal myocardial infarction. The testimony of Dr. Bridges also related decedent's presence at the mill on the night of his death as a stress that contributed to his death. We believe this determination was reasonable because decedent, while filling out his time card and awaiting instruction with regard to his night's work, must have contemplated the problems of the upcoming shift, even though he had not actually commenced the performance of his work. This is substantial evidence supporting the trial judge's determination that plaintiff established a causal relation between decedent's heart attack and his employment and we agree with his finding.
Defendant's contention that decedent was under non-work-related stress caused by the death of his mother, father-in-law and mother-in-law all in a few weeks before his death does not detract from the conclusion that decedent's death is compensable. Roussel's, supra, guidelines do not require that the work-related factors which contributed to the heart attack be the exclusive cause of the heart attack in order for it to be compensable. While the medical evidence recognized that the stress sustained by the decedent by the loss of close members of his family may have contributed to his myocardial infarction, it clearly establishes that the work-related stress was an important factor in bringing about the fatal heart attack.
The defendant produced no evidence that decedent's work had not placed him under stress for the several days preceding his heart attack. Decedent's immediate supervisor who was called as a witness by defendant, testified decedent was placed under stress by the nature of his work during the several days preceding his death. Defendant offered no medical evidence that stress related to decedent's work was not a contributing cause of his heart attack. The law is well settled that a heart attack which is work-related is compensable.
An employer who fails to pay compensation benefits where the facts requiring their payment are uncontradicted by the evidence, and the law applicable to those facts is well settled, becomes liable for penalties and attorney's fees under the provisions of LSA-R.S. 23:1201.2. In Brewton v. L. L. Brewton Lmbr. Co., Inc., 349 So.2d 1364 (La.App. 2d Cir. 1977), the court stated:
"Defendant's final contention is that the trial court erred in allowing penalties and attorney's fees. LSA-R.S. 23:1201.2 provides that when failure to make payments is found to be arbitrary, capricious or without probable cause the employer shall be subjected to penalties and attorney's fees. We accept defendant's argument that its defenses have been asserted seriously and in good faith. Nevertheless, the defenses are without a solid or substantial basis either in fact or in law. The facts of this case were virtually undisputed, *1187 as shown by the fact that defendant called no witness to contradict any of the facts asserted by plaintiff. On each of the issues asserted by defendant, the law is well settled as applied to the established facts. The trial court's determination that defendant's failure to pay benefits was arbitrary, capricious and without probable cause is correct." Id. at 1367.
The trial judge in his reasons for judgment made the following factual determination on the issue of penalties and attorney's fees:
"Defendant introduced no medical testimony, evidence or medical reports upon which it based its refusal to pay workman's compensation death benefits. The main contention of the defendant was that the death of Mr. McDonald was caused by stress from grief resulting from the recent deaths of three of his family members. However, this primarily arose because of a statement made by the grief-stricken widow of Mr. McDonald to defendant's manager of employee relations at the hospital immediately after the death of Mr. McDonald, when the widow apparently indicated to him that Mr. McDonald was taking medication for nerves which the doctor thought related to the three deaths. There was never any testimony from a doctor to substantiate this position, and no such evidence was offered at the trial of the case. I do not see that this is sufficient basis for a defendant to base its refusal to pay workmen's compensation benefits. That refusal is not supported by medical evidence or by factual information, as shown by the testimony in this case."
The record fully supports this conclusion. The trial judge's award of penalties and attorney's fees is correct.
Judgment is affirmed at appellant's cost.
FRED W. JONES, Jr., J., concurs in part and dissents in part.
FRED W. JONES, Jr., Judge, concurring in part and dissenting in part.
I agree with the majority that the plaintiff is entitled to workmen's compensation benefits, but dissent from the allowance of penalties and attorney fees.
An employer who fails to pay compensation benefits where there is no factual or legal dispute is liable to the claimant for penalties and attorney fees under La.R.S. 23:1201.2. However, it is obvious that this question must be decided upon the facts of each particular case. In referring to this issue, the court in Crooks v. Belden Corp., 334 So.2d 725 (La.App. 3rd Cir. 1976) commented:
"The penalty provided by the statute is very harsh and should not be imposed in doubtful cases. Where there is a bona fide dispute as to the occurrence of the accident or the causal connection between the accident and the disability, an employer's refusal to pay benefits is in good faith and with just cause." Id. at 727.
It should be clear that the mere fact that the employer refuses to pay on the ground that he denies liability entirely, or denies that he owes as much as is demanded is not enough to warrant the imposition of the penalty even though the facts and law developed at the trial show that he was in error in refusing. The refusal must have been without reasonable foundation in fact or law. Malone-Johnson, "Worker's Compensation", Vol. 14, La. Civil Law Treatise, Sec. 389, p. 286.
The primary question here is whether defendant's refusal to voluntarily pay plaintiff workmen's compensation benefits was without reasonable foundation in fact or law. The record shows that plaintiff's husband had been on his employment premises for some 10 or 15 minutes prior to his fatal heart attack, but had not engaged in any work during that period of time. The autopsy report prepared by the pathologist, Dr. George McCormick, contained no information connecting the cause of death with the decedent's employment. Immediately after the death decedent's widow indicated to one of defendant's officials at the plant that the decedent had been under considerable *1188 stress because of recent deaths of family members.
Both the trial judge and the majority seem to imply that an employer has the burden of proving that he was not "arbitrary, capricious or without probable cause" in refusing to voluntarily make workmen's compensation payments. For example, the trial judge indicated in his written reasons that defendant was under an obligation to offer medical testimony to support its argument that the employee's heart attack could have been caused by grief over the deaths of his family members. The majority cites the Brewton case with its comment that "defendant called no witness to contradict any of the facts asserted by plaintiff." The primary questions presented in Brewton were whether plaintiff was an employee of the defendant and, if so, whether the accident occurred in the course of his employment. Examination of that opinion reveals that there was actually no contradiction of the evidence presented by plaintiff. The case at bar is different because the evidence presented on behalf of plaintiff in itself raised serious questions concerning the causal connection between the decedent's employment and his death. Obviously, in that situation there is no particular significance to be attached to the failure of defendant to call witnesses since the evidence upon which it relies becomes a part of the record through the presentation of plaintiff's case-in-chief, as amplified by cross-examination.
In the recent case of Bartley v. Insurance Co. of North America, 388 So.2d 461 (La. App. 2d Cir. 1980), this court stated:
"A deposition of plaintiff's physician was taken approximately one week before trial and he stated the exact cause of her condition could not be determined. Although the court ultimately found plaintiff to be entitled to compensation benefits, no clear relationship between her condition and her job activities was evident, particularly since no specific incident or `accident' as such had occurred. Under these circumstances we do not find defendants were unreasonable in their refusal to pay benefits until after the case had been tried and decided." At p. 463.
Even though defendant, after trial, was deemed in error in refusing to voluntarily pay workmen's compensation benefits to plaintiff, I do not believe that this refusal was without a reasonable foundation in fact or law. Whether the fatal heart attack was causally connected to the decedent's employment was a serious factual issue. The purpose of the trial was to resolve this issue. Defendant should not be penalized for availing itself of this right.
For these reasons, I respectfully dissent from the award of penalties and attorney fees.