414 So.2d 1292 (1982)
John W. BEATY, Sr., Plaintiff-Appellant,
v.
THIOKOL CORPORATION, Defendant-Appellee.
No. 14789.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1982.
Writ Denied June 21, 1982.
Charles W. Seaman, Natchitoches, for plaintiff-appellant.
Nelson & Achee, Ltd. by Roland J. Achee, Shreveport, for defendant-appellee.
Before PRICE, HALL, JASPER E. JONES, SEXTON and NORRIS, JJ.
HALL, Judge.
While performing the duties of his employment plaintiff suffered a ruptured abdominal aortic aneurysm which required surgery and resulted in his total and permanent disability. After trial of his action to recover worker's compensation benefits the district court rejected plaintiff's demands on a finding, based on the opinions expressed *1293 by the only medical witness, that the evidence fell short of establishing by a reasonable preponderance that the ruptured aneurysm was caused by plaintiff's job activities. On plaintiff's appeal we reverse, holding that the occurrence of the accidental injury while plaintiff was performing employment activities gives rise to an inference or presumption that the accidental injury was precipitated by the employment activity and that the medical evidence presented in this case was not sufficient to overcome that inference or presumption.[1]
Facts
Plaintiff was employed by the defendant as a storage supervisor at an ordnance plant. His duties included receiving, storing, and shipping all inert and explosive items coming into his particular area. His usual working hours were from 7:00 a. m. until 4:00 p. m. On the morning of the accident, August 1, 1979, plaintiff had been supervising the loading of a tractor-trailer rig. The loading was done mechanically and plaintiff did not lift anything himself. At about 11:00 plaintiff drove his crew to the "change house" for their lunch break. Plaintiff did not stop for lunch but returned to the job site where the trailer was parked in order to inventory the cargo which had already been loaded. He drove his van close to the trailer, got out of the van, walked over to the trailer and pulled himself up into the trailer.
As plaintiff pulled himself into the back of the trailer he experienced a sharp pain in his lower back about "kidney high". After he was in the trailer the pain continued and his "legs would not work." Plaintiff got out of the trailer, called for assistance and was taken to the hospital. The diagnosis was that plaintiff had suffered a ruptured abdominal aneurysm and emergency surgery was performed. Plaintiff survived but is now totally and permanently disabled from pursuing a gainful occupation.
The Medical Evidence
The only medical evidence presented was the deposition of Dr. Robert Barrett, a well-qualified Shreveport vascular surgeon, who performed the surgery on plaintiff and treated him for his condition. The doctor testified that the aneurysm which was 12 to 14 inches in length had been present for some time but the doctor would not express an opinion as to how long. As to the cause of the aneurysm the doctor expressed the opinion that blood vessel disease is probably a hereditary or genetic condition and that when you have blood vessel disease or weak blood vessels it is usually not a localized phenomenon but is a generalized situation. A person that has an aneurysm that ruptures in the abdomen usually has diseased blood vessels throughout the body. The doctor explained that the aneurysm had expanded over a long period of time but that the rupture was instantaneous. When asked what causes a rupture the doctor explained, "... it's like a balloon. You blow it up and it reaches its maximum capacity and it ruptures. Same thing with an aneurysm. You reach your maximum capacity and it ruptures." Dr. Barrett testified that "... what makes one man develop an aneurysm and another one not, we think it's tied in with genetics but we really don't know. What makes one aneurysm expand at a more rapid rate than another we don't understand."
Plaintiff's description of his activities at the time the aneurysm ruptured was read to the doctor and the doctor was asked if he felt that could have caused the rupture. The doctor answered, "No sir I don't", and explained that the "ruptured aneurysm can occur at any time." The doctor stated that there has been "no good study" of whether certain activity or trauma can precipitate the rupture of an aneurysm. His opinion was that exertion would not have any effect on an aneurysm but that trauma as opposed to exertion could have an effect.
*1294 Applicable Law
Under Louisiana worker's compensation law an employee is entitled to compensation benefits if he has suffered "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. "Accident" is defined as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." LSA-R.S. 23:1021(1). "Injury" includes "violence to the physical structure of the body." LSA-R.S. 23:1021(7). It is well settled in Louisiana that a heart attack, stroke, ruptured aneurysm, or other similar vascular accident is "injury by accident." Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir. 1977), writs denied, 345 So.2d 902 and 903 (La.1977). See also Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975); Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Francis v. Gerlach Meat Company, Inc., 319 So.2d 534 (La.App.2d Cir. 1975), writ denied, 322 So.2d 776 (La.1975); and Gilbert v. Bituminous Casualty Corp., 344 So.2d 86 (La. App.2d Cir. 1977).
In Fields we discussed the rationale of these cases as follows:
"Louisiana has adopted the accidental result approach as distinguished from the accidental cause approach in determining whether there is injury by accident. Louisiana is among many jurisdictions that look to the employee, that is, the result to the employee, to determine whether there was an unexpected and catastrophic effect upon him. See Larson's Workmen's Compensation Law § 37.20. Extraordinary physical stress and strain is not essential to the definition of disabling accident. When the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. An injury is accidental if it is unexpected and unforeseen and happens suddenly and violently, producing objective symptoms of injury at the time. Ferguson v. HDE, Inc., supra and the other cases cited above."
It is well established, however, that in order to recover under the worker's compensation act for such an accident there must be proof of a causal connection between the employment and the accident. Leleux, supra; Roussel, supra; and Prim v. City of Shreveport, 297 So.2d 421 (La.1974). The evidence must show that the accidental injury was caused, precipitated, or contributed to by factors directly related to the employment. McDonald v. International Paper Company, 398 So.2d 1182 (La.App. 2d Cir. 1981), affirmed in part and reversed in part on other grounds 406 So.2d 582 (La. 1981). It is not necessary that the accident be caused by extraordinary activities[2] of an employee or that the employment activities be the exclusive cause of an accidental injury. It is only necessary that the accidental injury be caused, precipitated, aggravated, *1295 or contributed to by the actions, exertion, or other factors directly connected with the employment. It is immaterial that the disability could have been brought on by causes other than a work-related accident. Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976) and the other cases cited above.
Roussel recognized the difficulty in proving or disproving causation in this type case because of the fact that a preexisting vascular infirmity can produce disability irrespective of any outside influence. In Roussel the court found that the medical testimony established that the plaintiff's myocardial infarction "could have been caused or precipitated by" the decedent's duties as a machinist and "causal connection was thus clearly established by a preponderance of the evidence." This holding requiring a very minimal showing of medical possibility takes a realistic approach to the difficulty posed by the vagueness and uncertainty of the medical testimony presented in most of the vascular accident cases.
The Leleux decision handed down the same day as the Roussel opinion established an inference or presumption to be applied in the determination of whether the injury was caused by the employment. The court in Leleux stated the well-established rule that there must be proof of causal connection between the employment and the accident and then went on to hold:
"The causal relation may be inferred when there is proof of an accident during the course of employment and an ensuing disability or death with no intervening cause." (citations omitted).
In Gilbert v. Bituminous Casualty Corp., supra, this court held:
"... There is no dispute that the injury in this instance occurred within the course of plaintiff's employment. The difficult problem is the determination of whether the injury was caused by the employment.
"The causal relationship may be inferred when there is proof of an accident during the course of employment with no intervening cause. Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975)."
The Third Circuit considered application of the Leleux inference or presumption in Rowland v. Continental Oil Co., Inc., 374 So.2d 734 (La.App.3d Cir. 1979), writ denied, 376 So.2d 1268 (La.1979). The majority in that case held that it must first be proved that the accident is causally related to the employment activities and it is only then that there is an inference that any ensuing disability was caused by the accident and injury, where there was no intervening cause. Judge Watson concurred, stating, however, that he could not agree with the majority that a heart attack which occurs while an employee is working is not presumed to be causally related to employment activities. His opinion was that the inference or presumption of causal connexity is to be applied to the question of whether the accident is employment related but that the inference or presumption may be rebutted, if the medical evidence completely eliminates work activities as a contributing factor in the accident.
The scholarly opinion written by Judge Culpepper in the Rowland case may well be correct that in the cases prior to Leleux the presumption was applied to the question of whether the claimant's disability resulted from the accident and not to the question of whether the accident was related to employment activities. However, in Leleux the court was directly faced with the issue of causal relationship between the employment activities and the accident and applied the presumption to that issue, awarding benefits on the basis of very minimal medical evidence.
In the very recent case of Adams v. New Orleans Public Service, Inc. (No. 81-C-0784, September 28, 1981), rehearing granted and pending, the supreme court reviewed a decision of the Fourth Circuit Court of Appeal, 395 So.2d 470 (La.App. 4th Cir. 1981) which held that plaintiff could not recover workmen's compensation benefits because no incident or series of incidents during plaintiff's employment caused plaintiff's arteriosclerosis or the episodes of angina pectoris. Holding *1296 that the court of appeal's analysis of causation was faulty the supreme court's opinion states:
"... Where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. When dealing with a claim for workmen's compensation, we have repeatedly stated that it is irrelevant whether the accident might have occurred at another place and at another time. The only pertinent inquiry is whether in fact, the accident happened on the job...."
As noted, a rehearing has been granted in the Adams case and the quoted statement cannot at this point be considered as authoritative. However, the Third Circuit Court of Appeal in Guidry v. Sline Industrial Painters, Inc., 406 So.2d 303 (La.App.3d Cir. 1981) relied on Adams in awarding benefits to the plaintiff whose husband had suffered a heart attack even though the court of appeal agreed with the trial court that the preponderance of medical evidence was to the effect that the decedent's heart attack was neither caused nor precipitated by any activity in which he was engaged in the course of and during his employment. The court of appeal interpreted the Adams case as applying a presumption of work-related causation and emphasized the statement that the only pertinent inquiry is whether in fact the accident happened on the job. The court held that since the decedent's heart attack occurred suddenly, violently, and unexpectedly while he was on the job and death resulted, a compensable accident occurred.
Because of the difficulty of proof and the uncertainty of the medical evidence in most of the vascular accident cases, applying a reasonable inference or presumption of causal relationship between employment activities and the on-the-job accidental injury makes sense and should lead to some degree of consistency in deciding these cases.
The cases need not be decided in a factual vacuum, limited to the specific medical evidence in each case. There are enough reported cases involving vascular accidents for a lay person to know that there is substantial medical opinion that stress, exertion, elevation in blood pressure, and the like from ordinary activity can possibly be precipitating factors in the rupture of a blood vessel. We also learn from the many reported cases that the state of medical science in this area is such that it is basically unknown what factors may or may not precipitate a rupture and that opinions vary.
Most of the cases previously cited involved vascular accidents of some sort and in most of the cases where the plaintiff recovered benefits the medical evidence was vague, uncertain, minimal, and conflicting. Gilbert v. Bituminous Casualty Corp., supra, involved the rupture of an abdominal aneurysm. Although the ruptured aneurysm was discovered after plaintiff was involved in an automobile accident, the preponderance of the evidence showed that the aneurysm ruptured prior to the accident. Thus, the issue was whether the ordinary activities of plaintiff's work as a landman contributed to the rupture of the aneurysm. There was testimony by one doctor that an aneurysm may rupture as the result of the stress of increased blood pressure and that the nature of plaintiff's work could have caused the rupture. Another doctor testified that there was a possibility that the employment could have been the cause of the rupture.
Cunningham v. American Mutual Insurance Companies, 390 So.2d 1372 (La.App. 4th Cir. 1980), writ denied, 396 So.2d 929 (La.1981), involved an employee who died after sustaining a subarachnoid hemorrhage caused by an aneurysm of the anterior communicating (cerebral) artery. Since plaintiff died while working alone there was no evidence as to the activities he was engaged in at the time the aneurysm ruptured. Only one of the two doctors who treated the decedent at Charity Hospital could be found and he testified that the decedent's work as a plumber would not have caused the hemorrhage. In spite of this lack of medical evidence of causal relationship the court found that since any unknown factor may trigger the rupture and since the rupture took place while decedent was actively engaged in his work the court could not say *1297 that it was not caused by stress incurred due to the work. Finding that the decedent's death was work related, benefits were awarded. Lack of medical certainty and variance of medical opinions concerning the cause of and the factors which contribute to the rupture of an aneurysm are also illustrated by the evidence in Francis v. Gerlach Meat Company, Inc., supra, which involved a ruptured intercranial aneurysm.
The rule that the occurrence of an on-the-job vascular incident gives rise to a rebuttable inference or presumption that the accidental injury is related to employment activities is a sound, pragmatic, and functional rule to be applied in these cases because of the difficulty of proof resulting from the lack of medical knowledge as to causation and the varying medical opinions as to causation. We choose to follow Leleux and our previous Gilbert case and apply the presumption in the instant case.
Application of the Law to the Facts
Plaintiff suffered a rupture of an abdominal aortic aneurysm after working for several hours and at the very moment he was engaged in the strenuous movement of pulling himself up into the back end of a trailer. The natural factual inference to the lay mind is that the plaintiff's work activity could well have been a precipitating or contributing factor to the rupture of the aneurysm at that particular time. The legal inference is that there was a causal connection between the employment activity and the accidental injury.
The medical opinion evidence in this case does not convincingly rebut the presumption of causal connection.[3] Although the well-qualified doctor, whose opinion is entitled to substantial weight, expressed his opinion that the movement and exertion by plaintiff did not cause the aneurysm to rupture, the doctor also candidly stated that the cause of an aneurysm expanding and rupturing is unknown and that there have not been any good studies made on the precipitating factors.
Applying the presumption that the on-the-job accidental injury was related to the plaintiff's employment activities and finding *1298 that the presumption of causal connection was not rebutted by sufficient evidence, we hold that plaintiff is entitled to recover worker's compensation benefits for total and permanent disability.
It was stipulated at trial that plaintiff was earning $6.79 per hour on the date of the accident. Assuming that plaintiff worked a 40-hour week, two-thirds of his average weekly wage would exceed the maximum limit for compensation established by LSA-R.S. 23:1202. Sixty-six and two-thirds per centum of the average weekly wage in all employment subject to the Louisiana Employment Security Law, which was $210.88 in August 1979, is $141 and this is the weekly amount to which plaintiff is entitled.
Decree
For the reasons assigned the judgment of the district court is reversed. Judgment is rendered in favor of plaintiff, John W. Beaty, Sr., and against defendant, Thiokol Corporation, awarding total and permanent workmen's compensation disability benefits in the sum of $141 per week beginning August 1, 1979 and continuing through the period of plaintiff's disability, with legal interest on each weekly payment from its due date until paid. Costs of this appeal are assessed to the defendant, Thiokol Corporation.
Reversed and rendered.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
In this case the plaintiff's crew had recently loaded a vehicle and he was returning to check on it. His only "labor" was the supervision of this loading. My reading of his testimony is that he was already in the van when he felt a sharp pain. In any case, his exertion was to grab a hand-rail, step on the bumper and get up into the truck. Thus in my view, the exertion did not cause the aneurysm to burst. The only medical evidence in the case, from a well qualified vascular surgeon, was that the aneurysm was caused by plaintiff's genetic pattern which resulted in vascular disease. The doctor specifically stated that the mere act of plaintiff entering this truck would not cause the rupture. He stated that aneurysms may burst at any time and do so in the fashion of a balloon, when they have reached their capacity. Thus, there was no stress to create an "accident."
The majority relies on Adams v. New Orleans Public Service, Inc. (No. 81-C-0784, September 28, 1981). I agree the result here is mandated by Adams, but as the majority notes, a rehearing has been granted in Adams. Only if Adams becomes law, is the majority here correct. I believe there is no "accident" or "injury" in Adams, or here. As Justice Blanche pointed out in his dissent to Adams and Judge Swift, the author of Guidry v. Sline Industrial Painters, Inc., 406 So.2d 303 (La. App. 3rd Cir. 1981), implied (in his footnote number one in expressing dismay at the Adams result which he felt obligated to follow in Guidry) Adams, makes the employer the health insurer at least for all vascular diseases which become manifest during employment hours. The result in Adams and here is an expansion of the current compensation act well past the legislative will and intent, and thus an invasion of that body's prerogative. I respectfully dissent.
NOTES
[1] This appeal was originally submitted to a panel of three judges. Two judges proposed to reverse the judgment of the district court and one judge proposed to dissent from that decision. Accordingly, the case was resubmitted to a panel of five judges prior to rendition of judgment. La.Const., Art. 5, § 8(B).
[2] The recent decision of the supreme court in McDonald v. International Paper Company, 406 So.2d 582 (La.1981), handed down November 16, 1981 appears to be an aberration or a "throwback" to the jurisprudence prior to the early 1970s. The court affirmed the trial court and court of appeal's award of death benefits for an employee's death caused by a myocardial infarction but reversed the lower court's award of penalties and attorney fees. The court based its affirmance of the award of benefits on evidence which disclosed "extraordinary" mental or emotional work-related stress as the cause of the heart attack and based its reversal of the award of penalties and attorney fees on a finding that whether the work-related mental and emotional stress was "extraordinary or any greater than that of ordinary life" and whether this stress was a real cause of the employee's heart attacks were serious questions that could only be resolved by trial. The court's emphasis on the importance of the stress being "extraordinary" was supported by the citation of mostly out-of-state cases and seems inconsistent with the long line of cases decided by the supreme court and the courts of appeal in Louisiana since the early 1970s which have written out of this state's jurisprudence any requirement of "extraordinary" stress or exertion and which have repeatedly held that when the performance of usual and customary activities of an employee contribute to a heart attack or similar accidental injury, the injury is compensable.
[3] Kostamo v. Marquette Iron Mining Co., 405 Mich. 105, 274 N.W.2d 411 (1979) contains an interesting and authoritative discussion of proof of work-related causation of heart damage. The opinion notes that doctors and lawyers approach the problem of cause from different perspectives. Medically the cause may be considered that activity or agent without which a condition would not have appeared. From the legal point of view if some factor or element plays a role in bringing about a result sooner than ordinarily would have been expected, it may be considered a cause for which legal liability may accrue. Doctors look for the idiological or medical cause; lawyers look for the legal cause. Generalities, such as "inevitable", which may express no more than the medical view of causation, do not assist a trier of fact or reviewing court in deciding whether there is legal causation such that compensation is payable. The court noted that while medical testimony may be helpful and even ultimately decisive, the trier of fact is obligated to consider all the testimony in determining legal causation. Lay testimony may not be ignored when considering the causal connection between employment and a heart attack. Noting the lack of certainty reflected in the current status of scientific knowledge the court stated that the law does not place on claimants the impossible burden of proving with certainty that work-related stress contributed to their cardiac disorder. The court stated that because of the differing terminology of doctors and lawyers conclusionary statements concerning causation should not be uncritically adopted without examination or relation of the facts to the conclusion. The judgmental question of whether the employment activities caused the heart attack is not entirely the province of the medical profession. The trier of fact is permitted to draw natural inferences from all the evidence and testimony, lay and medical. The court also noted, although not faced with the question, that some courts have held that a prima facie case for compensation because of a heart attack may be established without medical testimony.

Although the Michigan case dealt with heart attacks, most of what was written would be applicable to vascular accidents of different kinds. Having said this, it should also be said, however, that although lawyers and judges tend to lump heart attacks, strokes, ruptured aneurysms, and other vascular accidents together, there are certainly significant medical and physical differences between the different categories and within the different categories. Medical evidence and opinion is, therefore, important, but not necessarily conclusive, in every case and it remains true that each case must be decided on its particular facts.